USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/7/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

Thomas Ellin et al,

                Plaintiffs,

      -against-

Best Buy Stores, L.P. et al,

                Defendants.

-----------------------------------------------------------x

1:16-cv-8855 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Thomas Ellin and his wife bring this diversity tort action to recover damages for personal injuries that Thomas Ellin sustained on a slip and fall while at Defendants' store, Best Buy. Defendants Best Buy Stores, L.P. and Best Buy Company, Inc. (collectively, "Best Buy") now move for summary judgment. For the foregoing reasons, the motion is granted.

## BACKGROUND

The following facts are drawn from Defendants' Rule 56.1 Statement (Defs. 56.1 Stmt.) and Plaintiff's Counterstatement of Material Facts Pursuant to Rule 56.1 (Pl. Counterstmt.) and are undisputed unless otherwise noted.

On October 4, 2014, Thomas Ellin entered a "Best Buy" store located at 1880 Broadway, New York, New York. Defs. 56.1 Stmt. ¶ 1. Ellin slipped and fell on "an accumulation of water" while walking down the steps of a moving escalator between the two floors of the Best Buy store. *Id.* ¶ 2.

The Best Buy store has two sets of doors leading from the street entrance through a carpet-covered vestibule and into the interior of the store. *Id.* ¶ 3. According to Ellin, at the

1

time that he entered the store, light rain had been falling after a pouring rain earlier the same day. *Id.* ¶ 5. Carrying a closed umbrella, Ellin exited the vestibule into the store and walked on a single rectangular shaped mat measuring six feet by eleven feet before heading to the grating on the floor just in front of the escalator. *Id.* ¶¶ 7, 9-10, 38. Ellin contends there was only one mat at the entrance of the store and no matting along the walkway to the escalator. Pl. Counterstmt. ¶ 9. According to Ellin, he had no difficulty seeing the area in front of him. Defs. 56.1 Stmt. ¶ 35. Nothing distracted him nor did anything obstruct his view of the escalator steps. *Id.* ¶¶ 33-34.

Ellin "could see that [the escalator] steps were wet[,]" specifically that each of the individual escalator steps were wet, and made note of that fact before stepping onto the treads of the escalator. Defs. 56.1 Stmt. ¶ 13-14, 19. Ellin further observed that the wetness he stepped in prior to his fall was "dragged in from outside of the store." *Id.* ¶ 15. Ellin did not see anyone mopping or any mop situated in the area near the escalators prior to his fall. *Id.* ¶¶ 16-17. Before his fall, Ellin had taken two or three steps down the moving escalator before he fell. *Id.* ¶ 18. According to Ellin, water on the escalator steps caused him to slip. *Id.* ¶ 24.

Ellin does not know how long the wetness was present on the escalator step where he slipped prior to his accident (*id.* ¶ 25), does not know anyone who made a complaint about moisture or wetness on the escalator steps prior to his accident (*id.* ¶ 26), and does not know of any Best Buy employee who was aware the escalator steps were wet prior to his accident (*id.* ¶ 27). He is not aware of any other source of the water on the escalator steps aside from rain being dragged in from outside of the store. *Id.* ¶ 29. No Best Buy employee said anything to Ellin or to anyone else about how the water got onto the escalator steps or how long the water

2

was on the escalator step where Ellin fell prior to the accident. *Id.* ¶¶ 30-31.

Junior Galvez, a former employee of Best Buy, was working as an asset protection associate at the time of the accident. Pl. Counterstmt. Additional Factual Allegations ¶ 2. He completed a safety incident report for the accident. *Id.* ¶ 10. As an asset protection associate, his responsibility was to make sure the store was safe for employees and customers. *Id.* ¶ 3. Asset protection associates were responsible for keeping the store free of liquids on the floor when it rained or snowed and would either call the cleaning crew to clean up a liquid or take care of it themselves. *Id.* ¶¶ 6-7. If there was an area of wetness brought in from the rain outside, an asset protection associate would notify the manager and then the manager would notify the cleaning crew. *Id.* ¶ 14. Galvez did not have an independent recollection of the incident; *id.* ¶ 9, but on the report he completed, Galvez checked off "poor housekeeping" as a contributing factor to the accident.[1] *See* Safety Incident Review (Levine Decl. Ex. G and Lizzi Decl. Ex. D).

Charles Roach, an Assistant Manager for the subject Best Buy store at the time of Ellin's accident, testified that store employees would place floor mats and wet floor signs at the entry points to the store in response to water brought into the store by rain. Defs. 56.1 Stmt. ¶ 36. Roach also testified that the practice would be to place the wet floor signs on top of the escalator and at the bottom of the escalator. *Id.* ¶ 38. Although he was not working on the date of Ellin's accident, Roach subsequently reviewed the Safety Incident Report Form, which indicated that a wet floor sign was present at the time of Ellin's fall. *Id.* ¶ 39; *see* Levine Decl. Ex. F. Roach also noted that asset protection associates would conduct and document their initial inspection at

---

[1] There are two safety incident reports. The first is a handwritten document entitled "Safety Incident Review – Customer Injury" annexed to the Defendants' moving papers as Levine Decl. Ex. G and Plaintiff's moving papers as Lizzi Decl. Ex. D. The second is the electronic "Safety Incident Report Form" annexed as Levine Decl. Ex. F.

3

the beginning of their shift, and afterwards they would address issues throughout their shift by getting notice either visually or through a sales employee. Pl. Counterstmt. Additional Factual Allegations ¶¶ 26-27.

Best Buy's store video records the 1) vestibule and immediate interior of the Best Buy store in the area of the escalators and 2) the escalators. The video recorded Ellin's fall on the subject escalator. Defs. 56.1 Stmt. ¶ 40. Ellin testified that the store video is consistent with his recollection of his entrance into the store and his fall. *Id.* ¶ 41. The video depicts Ellin entering the store at 1:37:35 p.m. carrying a large umbrella in his right hand. *Id.* ¶ 41. He does not pause to wipe his feet on the carpet in the vestibule and just walks across it. Pl. Counterstmt. ¶ 43. Upon entering the interior of the store, Ellin takes one or two steps on the floor mat, which is present on the floor between the entrance doors and the escalator.[2] Pl. Counterstmt. ¶ 45. In one minute prior to Ellin's fall, the video depicts several other persons descending the subject escalator seemingly without any difficulty or incident. *Id.* ¶ 46. At 1:37:42 p.m., Ellin gets on the escalator, begins walking down some steps, and at 1:37:46 p.m. takes a step down with his right foot, before he falls. Defs. 56.1 Stmt. ¶¶ 47-48.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros*

---

[2] The video does not depict the area between the immediate entrance and the escalator.

*Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citations omitted). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)

(citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal citations and quotation marks omitted).

## DISCUSSION

To establish a negligence claim under New York law, a plaintiff must demonstrate that: "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995) (citing *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)). A landowner has a duty to maintain its premises in a reasonably safe condition. *See Corbin v. Grand Union Co.*, No. 96CIV.4626, 1997 WL 739583, at *4 (S.D.N.Y. Nov. 26, 1997) (citing *Kellman v. 45 Tiemann Associates, Inc.*, 87 N.Y.2d 871, 872, 638 N.Y.S.2d 937, 938, 662 N.E.2d 255 (1995)). Where inclement weather occurs, landowners are neither "required to cover all of [their] floors with mats, nor to continuously mop up all moisture resulting from tracked-in [precipitation]." *Hickson v. Walgreen Co.*, 150 A.D.3d 1087, 1087, 56 N.Y.S.3d 157, 159 (2d Dep't 2017); *see also Gibbs v. Port Authority of New York*, 17 A.D.3d 252, 255, 794 N.Y.S.2d 320, 323 (1st Dep't 2005) ("[Defendant] did not have an obligation to provide a constant remedy of water being tracked into a building in rainy weather.").

A landowner, who did not create the dangerous condition, is liable for negligence when the dangerous condition causes injury only when the landowner had actual or constructive notice of the condition. *Taylor v. United States*, 121 F.3d 86, 89-90 (2d Cir. 1997) (citing *Gordon v. American Museum of Nat. Hist.*, 67 N.Y.2d 836, 838, 492 N.E.2d 774, 775 (1986)). "To

constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Id.* (quoting *Gordon*, 67 N.Y.2d at 837, 492 N.E.2d at 774). Moreover, "in constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the 'particular condition' at issue." *Taylor*, 121 F.3d at 90.

Best Buy argues that there is no genuine issue of material fact regarding it having actual notice (i.e. awareness) or constructive notice of the water on the escalator step. Specifically, Best Buy points to the absence of evidence that any Best Buy employee knew about water being on the escalator step or received any complaints about water on the escalator step, or that any Best Buy employee, and Ellin, knew how long the water was present on the escalator step prior to Ellin's slip and fall. Ellin counters that the checking off of a box for "poor housekeeping" as a contributing factor to the accident on the safety incident report by Galvez, an asset protection associate who responded to Ellin's slip and fall, raises a genuine issue of material fact as to how long the wet condition was present and therefore whether Defendants had notice of the condition.

Galvez's deposition testimony is as follows:

Q. For what reason did you check off poor housekeeping?

A. No idea.

Q. What would that mean?

A. Poor housekeeping could mean that we called the cleaning crew and they took a while to come out and clean it.

…

Q. Could it mean that there was -- the floors were wet and not cleaned up?

7

A. It could mean that the floor was wet, yeah, or that the person that was supposed to clean them up was coming up.  We probably called them.

Galvez Dep. Tr. 31:3-9, 14-19

. . .

Q. Here you checked off "Poor housekeeping."  I believe you testified before you don't know the circumstances of the reasons why you checked that, correct?

A. Yeah.

Q. It could be a number of things?

A. Yes.

Q. But in this case with Mr. Ellin you don't know what those things may or may have been?

A. Correct.

Galvez Dep. Tr. 73:9-19

Galvez's failure to explain why he checked off "poor housekeeping" is fatal to Ellin's argument that a genuine issue of material fact regarding constructive notice exists.  A non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal citations and quotation marks omitted).  Galvez provides for three possibilities for what "poor housekeeping" means: 1) that the cleaning crew was notified of a wet condition and was taking a long time to come clean it; 2) that there was a wet condition[3]; and 3) that the cleaning crew was notified of a wet condition and on their way up to clean it.  Only the first possibility suggests

---

[3] Roach testified that he assumed that the checking of "poor housekeeping" meant "[t]hat there was visible water on the floor that [had not been] mopped up." Roach Dep. Tr. 33:8-14.

8

that Defendants had actual or constructive notice of the condition. The second and third possibilities do not suggest any issue with notice, because the second does not touch on how long the water was there, and the third suggests that Best Buy was ameliorating the condition in a reasonable amount of time. Given these three possibilities—none of which Galvez can confirm and only one of which raises a genuine issue—the meaning of "poor housekeeping" is too speculative and thus cannot create an issue of material fact. *See Lexington Ins. Co. v. Western Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (finding that witness's deposition testimony that she "touched on" a matter at a claims conference but had no specific recollection about it was too speculative to defeat summary judgment on issue of whether she had given notice to insurer at the time of the conference); *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998) (finding no genuine issue of material fact as to whether employer had knowledge of a sexual harassment incident where plaintiff could not "remember when or exactly what was said" in her discussion with her supervisor); *Miller v. Target Corp.*, 12 Civ. 4747 (KMK)(PED), 2014 WL 12543821, at *5 (S.D.N.Y. Oct 31, 2014) (finding that plaintiff's testimony that Defendant's employee stated that a sensor in the automatic doors "may be off" is insufficient to defeat summary judgment on the issue of whether defendant had constructive notice of a defect in the automatic doors that caused plaintiff's injury).

Nonetheless, Ellin argues that the close proximity of Defendants' employees to where he observed water both on the ground and the escalator, together with the length of time that rain fell in the area[4] and the lack of regular inspections of the premises, all raise an issue of whether

---

[4] Plaintiff's meteorologist James Bria III has stated that there was 1.8 inches of rain that fell from 3:40 a.m. through 1:50 p.m. on the day of the accident. *See* Bria Aff. ¶ 10.

Defendants' had actual and/or constructive notice of the water on the escalator. The Court disagrees.

First, Ellin's argument that Defendants would have notice because its employees are positioned near the escalator fails because it is based on photographs of the escalator area taken after the day of the accident. *See* Lizzi Decl. Exs. E, F G. In other words, Ellin cannot speak to whether any Best Buy employees were situated close enough near the escalator to notice that water was present on the escalator at the time of Ellin's accident. Moreover, as a legal matter, notice cannot be inferred simply from the proximity of Defendants' employees to the dangerous condition, but rather "from proximity *combined* with other evidence that the [dangerous condition] was present for an extended prior of time." *Tingling v. Great Atlantic & Pacific Tea Co.*, No. 02 Civ. 4196(NRB), 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003). Second, the amount or length of time that rain fell in the area around the Best Buy store is not pertinent to the specific condition here, the water on the escalator inside the store.

Finally, the lack of regularly scheduled inspections by Best Buy does not raise a genuine issue of material fact here. Ellin incorrectly relies on the summary judgment standard in New York state courts, where "[t]o meet its initial burden on the issue of lack of constructive notice, the defendant must offer some evidence as to when the area in question was last cleaned or inspected relative to the time when the plaintiff fell." *See Hickson v. Walgreen Co.*, 150 A.D.3d 1087, 1088, 56 N.Y.S.3d 157, 159 (2d Dep't 2017). The Second Circuit has noted that the New York summary judgment standard differs from the federal standard and that under Fed. R. Civ. P. 56 "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Tenay v. Culinary Teachers Ass'n of Hyde*

*Park*, 281 Fed. App'x 11, 12-13 (2d Cir. 2008) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). Accordingly, here, Defendants "[are] not required to put forth evidence affirmatively demonstrating its lack of knowledge or its constructive knowledge; rather, it need only show that [Ellin] will not be able to prove at trial that Defendant[s] had such knowledge." *Strass v. Costco Wholesale Corp.*, 14-CV-06924 (PKC) (VMS), 2016 WL 3448578, at *3 (E.D.N.Y. June 17, 2016). Defendants have done so here.

As such, drawing all inferences in favor of Ellin as the non-moving party, a reasonable jury could not conclude that Best Buy had notice of water on the escalator step that caused Ellin's fall. As a result, his negligence claim fails.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, and the Complaint is dismissed.

**SO ORDERED.**

**Dated: March 7, 2018**
   **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**